**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**ISAAC PETWAY,**

      **Plaintiff,**

**v.**                                   **CIVIL ACTION NO. 5:06cv135**
                                               **(Judge Stamp)**

**HARLEY LAPPIN,   Director, FBOP;**
**KIM WHITE, Regional Director, FBOP;**
**WARDEN JOYCE FRANCIS;**
**VAL RAPPORT, Associate Warden;**
**CECIL NICHOLS, Associate Warden;**
**ABRAM, Dentist, FCI Gilmer;**
**DOE 1, Dental Assistant;**
**CMC Mrs. Sherwood;**
**CAPT. ARNOLD;**
**LIGAH, Lieutenant in SHU, FCI Gilmer;**
**DOE 2, Recreational Officer;**
**DOE 3, Record Office Personnel;**
**DOES, All other personnel responsible for the conduct**
      **and negligence,**

      **Defendants.**

**REPORT AND RECOMMENDATION**

**I.  Procedural History**

      The pro se plaintiff initiated this case on October 31, 2006, by filing a civil rights complaint and against the above-named defendants.  On November 2, 2006, the plaintiff was granted permission to proceed as a pauper.  The plaintiff paid his initial partial filing fee on November 17, 2006.

      On March 30, 2007, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not appropriate at that time.  Summonses were issued that same day.

      On July 11, 2007, defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment with a memorandum in support.  A <u>Roseboro</u> Notice was issued on July 12, 2007.

On August 13, 2007, the plaintiff filed a Motion in Opposition to defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment, requesting that the Court deny the defendants' Motion.

## II.  The Complaint

The plaintiff, is a federal inmate who is incarcerated at  FCI Gilmer, which is located in Glenville, West Virginia.   As previously noted, he filed a civil rights complaint on October 31, 2006, against the above-named defendant  pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. §1983 and  authorized suits against federal employees in their individual capacities.   The complaint, which is handwritten, is difficult to decipher.   However, it appears that the plaintiff is making numerous complaints against the defendants.  First, he asserts that the defendants have failed to treat his dental needs despite his constant complaints of pain and suffering.   Second, he complains that he was placed in the "hole" without justification, and that while there, he did not receive the same privileges as inmates in the general population.   Third, he alleges that the defendants have denied him access to the prison law library and have further denied him access to the courts by hindering his attempts to participate in the administrative process.   Fourth, he alleges that the defendants have failed to contact the parole commission on his behalf so that his sentences could be aggregated.   Finally, he alleges that the defendants denied him access to the supplies necessary to clean his cell.   As relief, the plaintiff seeks an Order from this Court finding that the actions of the defendants are unconstitutional in that they violate his right to due process, rights to equal protection and right to be free from cruel and unusual punishment.   In addition, the plaintiff seeks damages from each defendant in the amount of $25,000.

### III.  The Answer

For their answer, the defendants have filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment.  As support therefore, the defendants assert the following:

    A.  The Court lacks personal jurisdiction over defendants White and Lappin;

    B.  Employees cannot be sued in their official capacities;

    C.  Plaintiff failed to exhaust his administrative remedies;

    D.  The majority of plaintiff's claims are moot because he has been released from the Special Housing Unit ("SHU");

    E.  Plaintiff's Eighth Amendment and Equal Protection claims must be dismissed for failure to state a claim upon which relief can be granted;

    F.  Plaintiff had no liberty interest in avoiding confinement in administrative segregation;

    G.  Conditions in the SHU do not violate the Eighth Amendment;

    H.  Plaintiff fails to state an access to court claim;

    I.  Plaintiff's claim regarding his sentence computation is improperly raised in a <u>Bivens</u> action;

    J.  Plaintiff's claim that he was not given a mop in the SHU does not rise to the level of a constitutional violation; and

    K.  The defendants may claim qualified immunity.

### IV.  Standard of Review

### A.  Motion to Dismiss

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations.  <u>Walker v. True</u>, 399 F.3d 315 (4th Cir. 2005).  Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that

no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984); <u>Conley v. Gibson</u>, 355 U.S. 41, 4506 (1957).

**B. <u>Summary Judgment</u>**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. liberty lobby, Inc.</u>, 477 U.S. 242, 248 *1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id</u>. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u> at 256. The "mere existence of a scintilla of evidence" favoring

the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand

such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return

a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.

1987). Such evidence must consist of facts which are material, meaning that they create fair doubt

rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

party." Matsushita at 587 (citation omitted).

## V.  ANALYSIS

### A.  Exhaustion of Administrative Remedies

A Bivens action like an action under 42 U.S.C. §1983, is subject to exhaustion of

administrative remedies as required by the Prison Litigation Reform Act (PLRA). Porter v. Nussle,

534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action "with respect to prison

conditions" under 42 U.S.C. §1983 must first exhaust all available administrative remedies. 42

U.S.C. §1997e. Exhaustion as provided in §1997e(a) is mandatory. Booth v. Churner, 532 U.S. 731,

741 (2001). While the phrase "with respect to prison conditions" is not defined in 42 U.S.C. §1997e,

the Supreme Court has determined that the "PLRA's exhaustion requirement applies to all inmate

suits about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 (2002).[1]

---

[1]In Porter, an inmate sued the correctional officers who had severely beaten him. The inmate
alleged that the correctional officers "placed him against a wall and struck him with their hands, kneed him
in the back, [and] pulled his hair." Porter, 534 U.S. at 520.

Moreover, exhaustion is even required when the relief the prisoner seeks, such as monetary damages, is not available. Booth, 532 U.S. at 741.

The United States Supreme Court has held that proper exhaustion of administrative remedies is necessary, thus precluding inmates from filing untimely or otherwise procedurally defective administrative grievances or appeals and then pursuing a lawsuit alleging the same conduct raised in the grievance. See Woodford v. Ngo, 126 S.Ct. 2378 (2006). In Woodford, the United States Supreme Court clarified that the PLRA exhaustion requirement requires proper exhaustion. Id. at 2382. The Court noted that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386. The Court found that requiring proper exhaustion fits with the scheme of the PLRA, which serves three main goals: (1) eliminating unwarranted federal court interference with the administration of prisons; (2) "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Id. at 2388. As the Court concluded, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." Id.

The BOP provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9),within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the Warden's response, he may appeal to the regional director of the Federal Bureau of Prisons (BP-10) within 20 calendar days of

the Warden's response.  Finally, if the prisoner has received no satisfaction,  he may appeal to the office of the General Counsel (BP-11) within 30 calendar days of the date the Regional Director signed the response.  An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels.      28 C.F.R. § 542.10-542.15;  Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

The plaintiff has filed 110 administrative remedy requests whiled incarcerated by the Bureau of Prisons.  (Doc. 27, P. 2).  While he has exhausted his administrative remedies regarding his parole warrant and the aggregation of sentences (Remedy ID 416583); complaints about SHU staff (Remedy ID 420269); and requesting a mop for his cell (Remedy ID 422779), he has failed to exhaust his administrative remedies regarding dental care and use of the law library while in the SHU. (Id.).  In fact, the plaintiff has filed no administrative remedies regarding use of the law library, and while he filed several remedies regarding dental care, his requests were not considered at every level due to being rejected.  Specifically, Remedy ID 406996, regarding dental care was denied at the institutional and regional office levels and rejected five times at the central Office level. The plaintiff did not re-file this remedy after the fifth rejection.  Remedy ID 425294, also regarding dental care, was denied at the institutional and regional office level and was rejected once at the Central Office level.  The plaintiff re-filed at the Central Office level, where the remedy request was then closed with a response provided for informational purposes only.  An inmate "must fully complete each level of the process in order to properly exhaust his administrative remedies."  See Bell v. Haynes 2006 WL 3230283, *2 (N.D.W.Va. Nov. 6, 2006).

However, even if the plaintiff had exhausted his administrative remedies regarding

inadequate dental care, it is clear that the plaintiff has failed to state any claim against any of the defendants upon which relief can be granted. Accordingly, for the reasons discussed more fully below, that claim should be dismissed. Likewise, those claims that are exhausted, fail to state a claim upon which relief can be granted. However, the plaintiff's claim regarding the use of the law library does state a potentially viable claim, but should be dismissed without prejudice for failure to exhaust.

## B. **Dental Claims**

To state a claim under the Eighth Amendment, plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd

Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[2]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905,907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

---

[2] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

Farmer, 511 U.S. at 837.  A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

Inadequate dental care can support a valid action challenging the conditions of confinement protected by the Eighth Amendment.  See Hunt v. Dental Dept.. 865 F.2d 198, 200 (9th Cir. 1989).  "[T]he eighth amendment requires that prisoners be provided with a system of ready access to adequate dental care." Id. at 200.  See also Dean v. Coughlin, 623 F. Supp. 392, 399 (S.D.N.Y. 1985) (failure to provide routine care violates Eighth Amendment rights).

In the instant case, the plaintiff alleges that "regardless of the suffering and pain they will not treat my dental needs." (Doc. 1, p. 8).  However, even if the plaintiff has a serious medical condition by virtue of his dental woes, the exhibits submitted by the defendants clearly demonstrate that none of the defendants acted with deliberate indifference.

Specifically, the plaintiff's dental records show that on January 28, 2004, the plaintiff submitted an Inmate Request to Staff asking to be placed on the dental list for routine care.  He was placed on the list and informed that the wait was approximately one year. (Doc. 26-6, p. 1).  On August 12, 2005, he presented to dental sick call complaining of a painful tooth.  The tooth was evaluated and found to be non-restorable.  Therefore, it was extracted by the dental staff.  (Doc. 27-6, pp. 1, 36).  On November 14, 2005, the plaintiff returned to dental sick call complaining of pain in another tooth.  Again the tooth was determined to be non-restorable and was extracted.  (Doc. 27-6, pp. 1, 33).  On December 28, 2005, the plaintiff was scheduled for a teeth cleaning.  A dental examination was performed, at which time it was determined that additional teeth needed to be extracted.  Consequently, the cleaning was postponed, and a full-mouth x-ray was taken.  (Doc. 27-6, pp. 1).  On January 4, 2006, the plaintiff was called out to the dental clinic and given a comprehensive examination by George Abraham, D.D.S., Chief dental

Officer at FCI Gilmer. Two teeth were extracted during this examination, and a treatment plan was developed which called for the removal of all of the plaintiff's remaining teeth, and the fabrication of full upper and lower dentures. (Doc. 27-6, pp. 1-2, & 14-15). The plaintiff failed to keep an appointment on January 18, 2006. (Doc. 27-6, pp. 2, 16). On March 15, 2006, the plaintiff had another appointment at which he advised the dental staff that he did not wish to have all of his teeth removed. However, he did consent to have two teeth extracted at that time. (Doc. 27-6, pp. 2. 15). On July 13, 2006, the plaintiff had three more teeth extracted. (Doc. 27-6, pp. 2, 9). Finally, the plaintiff has been seen several times since July 2006, and has had other teeth extracted. Additionally, he was given a treatment after complaining of sensitivity to hold and cold. (Doc. 27-6, p. 2).

Accordingly, the only "evidence" that the plaintiff has received inadequate dental care in violation of his Eighth Amendment Rights is his self-serving one sentence statement in his complaint. Clearly, the evidence supplied by the defendants contradicts the plaintiff's claim and provides ample proof that the plaintiff has received continuous and appropriate care for his teeth. Nothing in the record establishes any facts sufficient to support a finding that any of the defendants were deliberately indifferent to the plaintiff's dental needs. Furthermore, while there may have been a delay in providing initial dental care, and some delay while he was in the SHU, delay alone does not suffice to show deliberate indifference. See Cox v. District of Columbia, 834 F. Supp. 439, 442 (D.D.C. 1992). Accordingly, the plaintiff's claim of inadequate dental care should be dismissed for failure to state a claim.

## C. Complaints Regarding Administrative Segregation in the SHU

The exhibits submitted by the defendants reveal that the plaintiff was incarcerated at FCI Gilmer pursuant to a three-year sentence imposed by the District of Columbia Superior Court for Second

Degree Cruelty to Children, and had a detainer lodged against him by the United States Parole Commission. (Doc. 27-3, p. 1). When his three-year sentence expired on May 17, 2006, the parole commission warrant was executed, and the plaintiff was held over at FCI Gilmer on the detainer. (Id.). The standard practice in the Bureau of Prisons is to house inmates in administrative detention in the SHU when they are not serving a valid sentence under a Judgment and Commitment Order. Following this standard practice, the plaintiff was placed in the SHU upon execution of the parole commission warrant while he awaited a hearing or other action by the U.S. Parole Commission. Thereafter, he refused an expedited revocation proposal sent to him by the Parole Commission which would have permitted him to waive an in-person revocation hearing, accept responsibility for the violation behavior, and be provided a decision on the record.[3] He was scheduled for an October 2006 hearing, but the decision was deferred because the plaintiff requested an attorney. FCI Gilmer staff unsuccessfully attempted to obtain a transfer for the plaintiff to an institution where he could be provided counsel for the parole hearing. Another parole hearing was scheduled on December 21, 2006, but the plaintiff again requested counsel and declined the hearing. The plaintiff had his hearing on March 22, 2007, at which time he was represented by the Federal Public Defender's Office. The plaintiff received his Notice of Action from the U.S. Parole Commission on April 6, 2007, which revoked his parole with none of the time spent on parole to be credited, denied re-parole, and continued to expiration. (Doc. 27-3, pp. 4-6). The plaintiff was released back into the general population on April 10, 2007. (Doc. 27-3, p.2). Therefore, the plaintiff was held in an administrative detention for approximately eleven months.

_____

[3]The expedited proposal was that his parole would be revoked with no time spent on parole credited, and that he would continue incarceration until his sentenced expired.

The plaintiff alleges that officials at FCI Gilmer placed him in solitary confinement without a hearing of any kind. He alleges that the administration's failure to afford him a due process hearing violated BOP policy. In addition to a due process claim, the plaintiff also alleges that his confinement in the SHU violated his Eighth Amendment rights. Specifically, he alleges that he was stripped of all clothing and then given a jumpsuit and shower shoes. In addition, he alleges that he was compelled to partake in recreation that consisted of going onto a concrete slab to "stand and gaze into the air." The plaintiff asserts that no other recreation was available despite the fact that BOP policy says that a person on Administrative Detention must have the same privileges as the general population.

Because the plaintiff's claims are directed at federal employees, the Fifth Amendment applies in determining his due process claim. See Berry v. City of Muskogee. 900 F.2d 1489, 1492 n. 2 (10th Cir. 1990) (Fifth Amendment protects against deprivations of life, liberty, or property by federal government). Due process questions are examined in two steps. First, it must be determined whether the government has interfered with a liberty or property interest. Second, if the government has interfered with such an interest, it must be determined whether the procedures which led to the deprivation were constitutionally sufficient. Kentucky Dept't of Corrections v. Thompson, 490 U.S. 454, 459 (1989) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972)) (applying 14th Amendment); Hewitt v. Helms, 459 U.S. 460 (1983). In making this inquiry, case law under 42 U.S.C. § 1983 is applicable to Bivens actions. See Butz v. Economou, 438 U.S. 478, 504.

The United States Supreme Court has held that prison inmates do not have a liberty interest in a certain prison classification arising from the Due Process Clause itself. Hewitt supra at 468. "[T]ransfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Id. at 467. Therefore,

under the Due Process Clause itself, the plaintiff did not have a right to any hearing or other procedural safeguards before he was moved to administrative segregation in the SHU.

Furthermore, to the extent that the plaintiff may be alleging that officials at FCI Gilmer violated policy statements and operating procedures in holding him in administrative segregation, he again fails to state a due process claim. A Bivens action "must be founded upon a violation of constitutional rights," Arcoren v. Peters, 829 F.2d 671, 676 (8th Cir. 1987), and "a failure to adhere to administrative regulations does not equate to a constitutional violation." Hovater v. Robinson, 1 F.3d 1963, 1068 n. 4 (10th Cir. 1993).

Finally, in Sandin v. Conner, the Supreme Court held that regulatory language does not create a liberty interest unless the language regulates the imposition of "atypical and significant hardship...in relation to the ordinary incidents of prison life." 515 U.S. 472, 485-86 (1995). Although, without question, the conditions in the SHU are more restrictive and austere that those the plaintiff enjoyed in the general population, these conditions are within "the range of confinement to be normally expected for one serving" a federal prison sentence. Id. at 487. He has cited nothing which demonstrates a significant hardship. Therefore, the plaintiff's placement in administrative segregation did not affect a constitutionally protected liberty interest, and he had no right to any level of due process before he was placed there or while he was maintained there.

Additionally, the conditions in administrative segregation did not violate the Eighth Amendment's prohibition against cruel and unusual punishment. To show an Eighth Amendment violation, the plaintiff must demonstrate (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials. See Strickler v.Waters, 989 F.2d 1375, 1379 (4th Cir. 1993), cert. denied 510 U.S. 949 (1993). Additionally there must be evidence

of a 'serious medical and emotional deterioration attributable to the challenged condition." Id. at 1380

(*quoting* Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990)).

The plaintiff does not complain that he was denied adequate, food, shelter, and medical care[4], nor that he was unprotected from harm.  Rather, the plaintiff's sole complaints regarding the conditions in administrative segregation are that he was denied the same conveniences as the general population such as television and inside recreation.

28 C.F.R. § 541.21(c)  sets forth the basic living standards for disciplinary  segregation, including cell conditions, cell occupancy, clothing and bedding, food, personal hygiene, exercise, personal property, reading material, supervision, and correspondence and visits.  28 C.F.R. § 541.22(d) provides that the basic level of condition prescribed for disciplinary segregation also apply to administrative segregation.  In addition, this provision provides that:

> If consistent with available resources and the security needs of the
> unit, the Warden shall give an inmate housed in administrative
> detention the same general privileges given to inmates in the general
> population.  This includes, but is not limited to, providing an inmate
> with the opportunity for participation in an education program, library
> services, counseling, religious guidance and recreation....Exercise periods,
> at a minimum, will meet the level established for disciplinary segregation....

While this regulation provides that inmates should be afforded the opportunity to participate in recreation, it does not specify the nature of that activity.  Furthermore, it does not specify that inmates must be afforded the opportunity to watch television.  Clearly, the plaintiff's complaint that

---

[4]As previously noted, the plaintiff raised claims of inadequate dental care which have been addressed in a separate section of the Report and Recommendation.  To the extent those claims relate to his confinement in administrative segregation, the plaintiff's dental records indicate that he was seen seven times while in segregation.  While he could not be seen on August 31, 2006, because the SHU was busy, he was seen on December 7, 2006.  Likewise, he could not be seen on March 1, 2007, but was seen on March 7, 2007. (Doc. 27-6, pp. 7, 10).  Those two instances do not amount to a serious deprivation of medical needs.

he was not afforded the use of a television and inside recreation does not raise to the level of cruel and unusual punishment, and the plaintiff has not demonstrated, nor even alleged any physical or emotional deterioration or any harm to his well-being due to his complaints. Accordingly, the plaintiff has failed to state a cognizable claim under the Eighth Amendment regarding the conditions of his confinement in administrative detention.

**D.  Aggregation of Sentences**

The plaintiff alleges that the defendants violated his rights by failing to aggregate his sentences. More specifically, the plaintiff maintains that "Federal and District of Columbia Laws mandates [sic] that all United States sentences be aggregated. The Laws of the District of Columbia goes [sic] a step further and mandates that all prisoners returning to custody for parole violation time for which they were on parole shall be computed as a new sentence." (Doc. 1-1, 8-9). The plaintiff goes on to complain that because prison officials did not aggregate his sentences, he is being falsely imprisoned.

An inmate's challenge to the computation and execution of his sentence must be brought under 28 U.S.C. § 2241. See United States v. Miller, 871 F.2d 488, 489-90 (4th Cir. 1989). Accordingly, the plaintiff's claim that prison officials did not aggregate his sentence fails to state a Bivens claim and is subject to dismissal.[5]

**E.  Access to the Courts**

The plaintiff makes two separate claims that the defendants have denied him access to the Courts. First, he alleges that the defendants deliberately hindered his attempts to participate in the

---

[5]The undersigned notes that on April 9, 2007, the plaintiff  filed a petition pursuant to 28 U.S.C. § 2241 on this precise allegation. That petition is pending before The Honorable Irene M. Keeley, United States District Judge and is on referral to Magistrate Judge Kaull. See 1:07cv50.

administrative remedy process.  As with much of his handwritten complain, his allegations in this regard are difficult to decipher.  However, it appears that he is claiming that the regional and central office have intentionally blocked his administrative remedies so he cannot bring matters to the Court for redress.  This allegation might have merit but for the fact that the plaintiff, by the defendants' own admission, has exhausted his administrative remedies on his pending claims except those regarding dental care and use of the law library.  Accordingly, in the context of the complaint presently pending before the Court, the plaintiff has suffered no harm by virtue of the defendants' alleged deliberate attempts to hinder the administrative process.  The dental care claim has been thoroughly reviewed in this Report and Recommendation despite the plaintiff's failure, for whatever reason, to exhaust his administrative remedies.  Additionally, the plaintiff can make no claim of hindering on the part of the defendants regarding use of the law library because he never attempted to exhaust his remedies with respect to that claim.  However, unlike his dental claim, the undersigned is of the opinion that his claim regarding the law library cannot be summarily dismissed on the basis of the record, but rather, must be dismissed for failure to exhaust.

Inmates have a general constitutional right to "adequate, effective and meaningful" access to the courts.  Bounds v. Smith, 430 U..S. 817, 822 (1977).  "The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries, or adequate assistance from prisoners trained in the law."  Id. at 828. In  Lewis v. Casey, 518 U.S. 343, 351 (1996), the Court held that since inmates have no "freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by" challenging the adequacy of the prison's law library or legal assistance program.  The Court further  held that "the inmate therefore must go

one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." Id. Nearly all of the access-to-courts cases in the Bounds line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated, or habeas petitions. In Wolff v. McDonnell, 418 U.S. 539 (1974), the Court extended this universe of relevant claims only slightly, to "'civil rights actions'--i.e., actions under §42 U.S.C. 1983 to vindicate 'basic constitutional rights.'" Lewis v. Casey, 518 U.S. 343, 354 (1996) (citations omitted).

When alleging denial of access to the courts, the prisoner must make specific allegations and must also identify an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996). "A showing of injury is required in order to avoid adjudication of trivial claims of deprivation." Id. at 1317. Actual injury sufficient to sustain a cause of action for denial of access to the courts is present where, for example, an inmate deprived of legal materials is unable to meet court imposed deadlines as a result of the deprivation. Roman v. Jeffes, 904 F.2d 192, 198 (3d. Cir. 1990).

Here, the plaintiff makes no concrete allegation whatsoever that his inability to use the law library in any way restricted his access to this Court with respect to his claims regarding dental care, confinement in administrative segregation, aggregation of sentences, or access to a mop to clean his cell. However, he does allege that is inability to gain meaningful use of the law library has prevented him from "being able to pursue my case in court, that is to file a petition for Writ of Certiorai to the Supreme Court in my criminal case." (Doc. 1-1, p. 18) Therefore, the plaintiff's claim regarding the law library may state a cognizable claim, and the defendants have not addressed

this specific allegation. However, his failure even to attempt to exhaust his administrative remedies prevent this court from addressing the same.

**F.  Prison's Refusal to Provide a Mop**

The plaintiff alleges that while housed in the SHU, he was not given access to a mop with which to clean his cell.  Instead, as alleged by the plaintiff, inmates in the SHU are given face cloths to "get on their hands and knees to mop their floor." (Doc. 1-1, p. 10).

The exhibits submitted by the defendants establish that inmates in the SHU at FCI Gilmer are provided cleaning supplies, including cleaning solutions, small brooms, and brushes with which to clean their cells on a weekly basis during the evening watch shift.   (Docs. 27-7, 27-8).  However, inmates in the SHU are not provided full sized mops because they provide security concerns as they potentially could be used to assault staff, other inmates, or to harm themselves. (Id.)

Clearly, the plaintiff has not been denied adequate cleaning supplies, and he does not complain of unsanitary conditions.  Instead, he merely asserts a preference for using a mop as opposed to cleaning the floor by hand.  As such, his complaint does not rise to the level of a constitutional claim for which relief can be granted.  See Graham v. Kuhlmann, 1990 WL 210298 *4 (S.D.N.Y. Dec. 12, 1990) (complaint alleging denial of a cell broom to inmate in Involuntary Protective Custody Status could not be viewed as constitutional in nature; decision was justifiable for obvious security reasons); see also Steimel v. Fields, 1995 WL 530610 *3 (D. Kan. 1995) (no constitutional right to a particular amount of cleaning supplies or to daily access to those supplies; inmate's complaint merely expressed a personal preference for different circumstances.

**VI.  RECOMMENDATION**

In consideration of the foregoing, it is the undersigned's recommendation that the plaintiff's

complaint (Doc. 1) be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915A and 1915(e) for failure to state a claim, except that his claim regarding the use of the law library be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies; the defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 26) be **GRANTED** on all claims except that dealing with the law library; and the plaintiff's "Motion" in Opposition to Defendants Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. 31) be **DENIED**.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: December 14, 2007.

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE